## Nalty *v.* Cohn et al.

[78 South. 3, Division B.]

1. SPECIFIC PERFORMANCE. *Right to remedy. Character of relief.*

Under the allegations and exhibits to the bill filed in this case which was a bill by the receivers of a bank against the president of a corporation seeking a money decree against him and to

require him to execute a mortgage on the lands of the corporation, the court held that the demurrer of defendant to the bill ought to have been sustained; that as to the money decree there was no written promise on his part to pay the debt of the corporation and no consideration for a promise to do so; that he could not be compelled to execute a mortgage on the company's lands because the corporation was not a party to the suit and the lands upon which a mortgage was to be given are nowhere described, neither the acreage or the value thereof being given and because the lands are beyond the jurisdiction of the court, being situated in the state of Louisiana.

2. CORPORATIONS. *Liability of officers.*

The mere fact that a defendant is the president of a corporation does not make him personally liable for its debts.

APPEAL from the chancery court of Lincoln county. Hon. O. B. TAYLOR, Chancellor.

Petition by Louis Cohn as assignee of the Commercial Bank & Trust Company and others against J. B. Nalty. Demurrer to the petition was overruled and an appeal granted to settle the law of the case.

The facts are fully stated in the opinion of the court.

*Price & Price,* for appellant.

This is one of the main contentions in the demurrer. J. B. Nalty is not liable for the debts of the East Union Lumber & Manufacturing Company and before he can be held for its debts, he must obligate himself in writing under the statute of frauds. It is not a case under section 909 for anything due for unpaid stock.

Section 4775, provides, that certain contracts must be in writing, and no action should be brought whereby to charge the defendant, or other person, first, upon any special promise to answer for the debt, default or miscarriage of any other person; second, upon any contract for the sale of lands, tenements, etc., or the making of any lease thereof for a longer term than one year, unless, in each of said cases, the promise or agreement upon which such action may be brought, or some

memorandum or note thereof shall be in writing and signed by the party to be charged therewith, etc.

The state of Mississippi, from its earliest decisions as we read them, has held steadfastly to the rule that it will ingraft no exceptions upon the statute for the prevention of fraud and perjuries and it has continuously assigned as a reason therefor, that while a strict construction of the statute may produce results, in some exceptional cases that was not in contemplation of the legislative mind, yet a loose construction of the statute or a departure from the law as written will produce more evil than the strict construction will exclude. *Gumble* v. *Koon,* 59 Miss. 264; *Beaman* v. *Buck,* 9 S. & M. 207; *Fisher* v. *Kuhn,* 54 Miss. 480.

We insist that the bill filed by the East Union Lumber & Manufacturing Company and Baggett & Cohn, Assignees, and the decree of the court thereon in June, 1914, is not an agreement in writing of J. B. Nalty individually to stand for the debts of the Lumber Company and nothing therein can be so construed, and any allegation in the bill that undertakes to explain or otherwise lay a foundation for holding J. B. Nalty, for debts of the lumber company is void under this statute. *Bowers* v. *Andrews,* 52 Miss. 596; *Holmes* v. *Evans,* 48 Miss. 248; *McGuire* v. *Stevens,* 42 Miss. 742; *Scherck* v. *Moyse,* 94 Miss. 259, 73 So. 869; 2 Elliott on Contracts, p. 463, sec. 1227; 79 Conn. 41; 134 Ill. 561; 37 Mich. 184; 50 Penn. 39; *Wright* v. *Payne,* 2 Tenn. Chan. 175; *Bloom* v. *McGrath,* 53 Miss. 249, 20 Cyc., 172; *Flynt* v. *Pierce,* 99 Mass. 48, 20 Cyc., 192, 49 So. 116.

Appellee claims that the promise made when the first bill was filed binds J. B. Nalty and it is on this promise made in the first bill that this suit is based.

There is nothing in this record to show that J. B. Nalty ever assumed to pay anything individually for the East Union Lumber & Manufacturing Company and unless the petition filed by the lumber company and

Cohn & Baggett, Receivers, and the decree rendered upon such petition binds Nalty individually under the law to pay the debts of the lumber company, then that is an end to this case.

The allegations in the bill filed against Nalty that he agreed to mortgage Louisiana lands to pay the debt, is without consideration, collateral, and is void, because a promise to pay and mortgage real estate cannot be made verbally to settle obligations of other concerns.

It is a general rule, that when a decree is taken upon a bill, everything not included is excluded, and what could have been included and was not, upon a second suit is *res adjudicata.* There was never any novation in this case and the East Union Lumber & Manufacturing Company was never discharged from its liability. *Craft* v. *Loft,* 87 Miss. 590.

An oral promise to indemnify one on a bail bond is within the statute. *May* v. *Williams,* 61 Miss. 125. In *Turnpike Co.* v. *Gooch,* 73 So. 869, the court holds, that a letter from the company's treasurer to the plaintiff, merely expressing an expectation to pay all claims, was not a sufficient written promise to pay the debt, as required by the statute of frauds.

There is no allegation in the bill, and none can truthfully be made, that J. B. Nalty ever collected anything for his own personal account, but everything was collected for the account of the lumber company, and as a matter of fact was paid over to the bank. It is conclusive from the record that the debt spoken of in the pleadings was the debt of the East Union Lumber & Manufacturing Company to the bank.

It is conclusive that no consideration was paid to J. B. Nalty to assume any part of the debt of the lumber company. It is equally certain that J. B. Nalty did not obligate in writing to pay the debts of East Union Lumber & Manufacturing Company. The record is conclusive of the fact that the bank continued to hold the lumber company for the debt, and we think

the record stripped of the allegations that cannot be proven by parol makes it absolutely conclusive that J. B. Nalty has never obligated in writing to pay the debts of the East Union Lumber & Manufacturing Company.

That the allegations of the bill, that J. B. Nalty agreed to mortgage property in Louisiana was void under the statute, and this will not, we apprehend, be seriously questioned. That he can be held upon such a verbal promise for the one thousand dollars laid in the bill, of the debts of the East Union Lumber & Manufacturing Company is equally unfounded in law.

We submit that the decree of the chancellor should be reversed the demurrer sustained, and the bill dismissed.

*J. W & H. Cassidy,* for appellee.

It is too well settled to admit of any lengthy citation of authority that an officer of a corporation committing a tort in the business of his principal to the detriment of a third person is personally liable therefor, although he may not receive any personal benefit therefrom. 7 R. C. L. 486, and authorities; *Clark* v. *Dunham Lumber Co.,* 5 So. (Ala.) 560.

In the last case cited, the Statute of Frauds is mentioned in the following words: "Every special promise to answer for the debt, default or miscarriage of another is void under the Statute of Frauds, unless reduced to writing, and the consideration is therein expressed. Code, 1886, section 1732. The established doctrine of the English courts, however, has always been, since the case of *Pasley* v. *Freeman,* 3 Term, 51, decided by the King's bench in 1789, that an action would lie for a false and fraudulent representation, knowingly made as to the solvency or credit of a third person, acted on by the plaintiff to his damage. That case settled the doctrine, based on broad principles of

honesty and commercial morality, that a false affirmation, made by the defendant with intent to defraud the plaintiff to his damage is the ground of an action on the case for deceit—this rule was followed by Chief Justice KENT in *Upton* v. *Vail,* 6 Johns, 181 (decided in 1910), and has generally prevailed in this country. The effect of the Statute of Frauds was by these decisions confined to cases of contract, and the statute was held not to include causes of action based on fraud; for, as has been well observed, 'it would be a manifest perversion of the Statute of Frauds to make it a shield for a deliberate wrong done.' 2 Smith Lead. Case., pt. 1, note 104.''

In this case Nalty did not assume to pay the debt of the East Union Lumber & Manufacturing Company. The debt owing by that company to the Commercial Bank & Trust Company but he had the East Union Lumber Company to undertake to have him pay the one thousand dollars and to indorse a note for three thousand nine hundred and one dollars and seventy-seven cents and mortgage his own property to secure the same and he acted for the East Union Lumber & Manufacturing Company, as president, and signed his name to the agreement.

The situation is ridiculous in the extreme. Nalty, the president of the company, acting for the company wrongfully collects collateral which he knows belongs to another and appropriates the proceeds of this collateral to the company of which he is president. When called to task, Nalty, as president of the company promises that the company will substitute the collateral by the payment of one thousand dollars to represent that much of the converted collateral, and by a new, independent note for three thousand nine hundred and one dollars and seventy-seven cents to be indorsed by himself and secured by a mortgage on property belonging to himself. He leads the company then into the chancery court and obtains an order of the court that this

arrangement may be carried out. Who is to carry out
the promise to the court? The East Union Lumber &
Manufacturing Company. Who is to move for the
East Union Lumber & Manufacturing Company? J. B.
Nalty, its president. Who promises to do these
things? J. B. Nalty, president. Had the matter re-
mained *in statu quo* who would have been responsible
for the value of the securities wrongfully appropriated?
J. B. Nalty and the East Union Lumber & Manufactur-
ing Company beyond any question of a doubt. The
estate of the bank undoubtedly lost the value of the
securities, because they had been collected and the
East Union Lumber & Manufacturing Company through
Nalty, got the money. In lieu thereof, the assignees
of the bank and the court got a promise, which J. B.
Nalty alone could carry out in the nature of things,
and which he did not carry out and the petition in this
case was to have him cited to show cause why he
should not be required to act in good faith with the
court. The very test as to whether or not a promise
made verbally is within the Statute of Fraud is lacking
in this situation, i. e., J. B. Nalty did not promise to
pay the debt of the East Union Lumber & Manufactur-
ing Company or any part thereof. But he did under-
take jointly with that company to return the equivalent
of securities wrongfully appropriated to secure that
debt and he was at liberty to do so. If "A" is president
of a corporation, and as such president wrongfully
deprives "B" of property belonging to him, and con-
fessing the wrong, says to "B" "if you will not
prosecute me for this wrong I will give you property or
securities of my own and pay you my own money and
see that you are not injured in any way, but I do not
guarantee the final payment of the debt. We do not
believe that such a promise would come under the
condemnation of the Statute of Frauds.

In this case, J. B. Nalty should be given the opportu-
nity to explain to the chancery court why he had

made representations and promises to the court and the court had acted thereon, and on the good faith thereof, and why he had not carried out these promises. If the Statute of Frauds can protect a man under the circumstances of this case, it seems to us that instead of preventing frauds it would become the instrument by which the grossest frauds might be perpetrated under the forms of law.

We cannot conceive how the courts of this state could allow a man who admits the facts set forth in the petition demurred to to escape his confessed turpitude by pleading a statute expressly intended to promote honest and fair dealings.

STEVENS, J., delivered the opinion of the court.

Appellee, Louis Cohn, assignee of the Commercial Bank & Trust Company, filed a petition in the chancery court of Lincoln county to require J. B. Nalty, appellant, to perform a certain agreement outlined in the petition. The cause of action arises out of the following state of facts: At the time the Commercial Bank & Trust Company went into the hands of a receiver, the East Union Lumber & Manufacturing Company, a corporation engaged in the manufacture and sale of lumber, was indebted to the insolvent bank in a sum approximately twenty-nine thousand dollars evidenced by two notes. To secure these notes the lumber company had assigned and deposited with the bank a list of its accounts against various parties to whom shipments of lumber were consigned. When the receivers took charge of the bank it was ascertained that the lumber company owed the bank a large balance, that many of the accounts pledged to the bank had been collected direct by officers of the lumber company, and that the state of the security was uncertain. Thereupon the receivers negotiated with the officers of the lumber company for an adjustment of the indebtedness and

for security to replace the accounts which the lumber company had collected direct from its customers. The negotiations led to an agreement, and this agreement was .outlined in a joint petition filed by the East Union Lumber & Manufacturing Company and the receivers of the bank, addressed to the chancery court having jurisdiction of the receivership proceedings, and upon this joint petition a decree was rendered by the chancellor, ratifying and approving the agreement. The petition outlining the agreement between the lumber company and the assignees directed attention to the past-due indebtedness owing by the lumber company, and to the fact that certain accounts of the lumber company against many persons for lumber shipped had been transferred as security, and attached a list of these accounts as a part of the petition, and stated that some of the accounts had been collected direct by the lumber company, that some had been included in the list by error, and that some of the accounts were in controversy. A list of the accounts which the company had collected in part, as well as those accounts which had been paid and those in controversy, were filed as Exhibit No. 2 to the petition. It was then stated and represented that the lumber company "has assigned and transferred and delivered to said assignees other accounts, a list of which showing the name of debtors and amounts is herewith filed, marked 'Exhibit No. 3;' and it is also agreed to deliver to the assignees a note, indorsed by J. B. Nalty, secured by a valid mortgage on certain lands in Louisiana to the amount of three thousand nine hundred and one dollars and seventy-seven cents, and said note to be made payable in ninety days from date and to draw interest." The petition further represented that the lumber company "has executed a certain other bill of sale to the assignees transferring them certain other lumber, a copy of which is herewith filed." It was averred that the assignee had attempted to collect the lumber accounts pledged with

the bank, but that in many instances "credits and corrections are claimed and adjustments are demanded and the assignees themselves, being unable to make such adjustments, not being informed as to merits of the several cases, respectfully show that said East Union & Manufacturing Company is in better position than they are to do so. The custom, as the assignees are informed, in similar cases, while the bank was a going concern was to allow the East Union Lumber & Manufacturing Company to make these collections and adjustments, and the money was turned into the bank and applied on the indebtedness contracted against said shipments, other accounts being transferred to meet deficiencies." It was then represented in detail that these accounts could be best handled direct by the lumber company "through the medium of the company's collecting department," and the prayer of the petition in that regard was that one Louis Nalty, an officer of the company, should be designated as agent and trustee to collect these accounts through the corporation upon his executing a good and sufficient bond equal to the value of the securities. An agreement was outlined also whereby any lumber covered by the bill of sale to the bank might be released, provided Louis Nalty be responsible for the value thereof and the lumber company should pay the value to said trustee Louis Nalty. It is then expressly represented that in the opinion of the assignees the lumber company has "sufficient property and assets to pay all of its debts, and that in its usual course of business it will be enabled to liquidate the indebtedness herein mentioned within a short time," and, further, that the result of the agreement therein set forth "will result in turning into money said accounts and securities without unnecessary delay and to the mutual advantage of all parties concerned." The court was asked to ratify and confirm this agreement, and thereupon the chancellor entered the following decree:

"This cause coming on to be heard on the petition
of the assignees and the East Union Lumber & Manufac-
turing Company, setting forth an agreement entered in-
to between them, to the effect that the said East Union
Lumber & Manufacturing Company, being indebted to the
Commercial Bank & Trust Company, and having trans-
ferred and assigned certain accounts to said bank and
to said assignees, and having transferred and set aside
by bill of sale certain lumber to secure indebtedness men-
tioned and set forth at length in said petition; that said
accounts were to be turned over to Louis Nalty and col-
lected for the assignees through the organization and
collecting department of the East Union Lumber & Man-
ufacturing Company, and the proceeds thereof paid over
to the assignees; that said lumber transferred was to be
kept intact, and so much thereof as might be necessary
for the use of the East Union Lumber & Manufacturing
Company was to be released to said company upon pay-
ment of the value agreed upon, said payment to be
promptly turned over to said assignees; that said
Louis Nalty was to give bond in the penalty of the
value of the property turned over to him to faithfully
carry out the agreement and account for all moneys
coming into his hands, and pay the same over to the
assignees, said bond with the United States Fidelity
and Guaranty Company as surety in the sum of thirty
thousand dollars, being hereby approved; that all of
said lumber was to be sold within a reasonable time,
said petition being referred to for the details, and the
court having heard the same and being of the opinion
that said agreement is lawful, and the carrying out
thereof will be for the best interest of the estate and
all parties concerned—it is therefore ordered, adjudged,
and decreed that said agreement be and the same is
hereby allowed, ratified, and confirmed, all parties there-
to to be accountable to the court for its faithful per-
formance. The premium on the bond to be paid equally

by said East Union Lumber & Manufacturing Company and assignees.

"Ordered, adjudged, and decreed this January 26, 1914."

Following this petition and decree, comes the present petition, representing briefly and in general terms that John B. Nalty, the president of the company, "acting for himself and the East Union Lumber & Manufacturing Company, by virtue of the agreements and representations made at the time to the assignees," promised to substitute other accounts for the accounts which had been collected and to pay a difference in value of one thousand dollars in cash and to execute a mortgage on real estate owned by J. B. Nalty personally and situated in Hammond, La., represented to be worth five thousand dollars to secure the sum of three thousand nine hundred and one dollars and seventy-seven cents. It is stated that the lumber company delivered and properly transferred other accounts in the place of the worthless accounts, and also that some lumber pledged to the bank had been turned over to Louis D. Nalty for sale, but that the defendant J. B. Nalty "promised and agreed that he would personally pay the said one thousand dollars and execute and deliver the mortgage for three thousand nine hundred and one dollars and seventy-seven cents, which said agreement was the consideration for securing him from then and there paying over said amounts collected as aforesaid," and that the defendant has wholly neglected and refused to pay the said sum or execute and deliver the said mortgage. The prayer of the petition is that the defendant be cited to show cause why he should not account to the estate for a total sum of four thousand nine hundred and one dollars and seventy-seven cents and interest, and that on final hearing should be required to pay this sum into court for the use of the insolvent bank. There is also a prayer for general relief. This petition is met by general demurrer, the grounds of

which are many, but all challenge the equity of the petition, the sufficiency of the agreement which it is claimed the defendant personally entered into submits, that there is no consideration for the individual undertaking of the defendant Nalty as an officer of the company, and that the agreement stated in the petition is not supported by the exhibits or any writing, and violates the statute of frauds. The demurrer was overruled, and an appeal granted to settle the law of the case.

We are of the opinion that the bill is insufficient, and that the demurrer should have been sustained. The bill is brief, and the general statements that the defendant Nalty agreed to pay a thousand dollars in cash and to execute a mortgage upon his individual lands in Louisiana are not supported by the exhibits. The joint petition of the assignees and the East Union Lumber & Manufacturing Company outlining their agreement for handling the accounts pledged to the bank, etc., nowhere shows that J. B. Nalty agreed to pay one thousand dollars in cash, and the whole record fails to show any reasonable hypothesis for the individual liability of J. B. Nalty for one thousand dollars or any other sum. The indebtedness held by the failed bank was against the East Union Lumber & Manufacturing Company, and any accounts pledged to the bank and collected by J. B. Nalty had been collected for the lumber company, and nowhere does the record show that J. B. Nalty had appropriated to his own use any of these accounts or the proceeds arising therefrom. It affirmatively shows that all things done by J. B. Nalty in the business referred to were done and performed by him as the president or officer of the East Union Lumber & Manufacturing Company, and, in the absence of a showing to the contrary, it is to be presumed that his acts were in good faith. In fact the very petition relied on shows a custom whereby the officers of the lumber company adjusted any accounts in dispute, and when the accounts were adjusted and collections

made thereon the proceeds of the collections were turned into the bank to be applied on the indebtedness. By custom it is shown that the bank had somewhat of a loose and indefinite way of handling these accounts pledged to it. It is nowhere shown that J. B. Nalty was indebted to his company, and the effort here to require him to pay a thousand dollars in cash is based upon no writing and no consideration. So much for the prayer for the recovery of the thousand dollars in cash.

The exhibits affirmatively show that J. B. Nalty agreed to indorse his company's note for three thousand nine hundred and one dollars and seventy-seven cents. He did not agree to execute this note as his primary obligation, and the record does not show that he agreed to execute any mortgage upon his individual lands. From the petition it would appear that the lumber company agreed to execute the note and to execute the mortgage upon the company's lands. In the petition relied on, the sole undertaking of J. B. Nalty in reference to the sum of three thousand nine hundred and one dollars and seventy-seven cents was merely to indorse his company's note for that amount, payable in ninety days, and bearing interest. The East Union Lumber & Manufacturing Company is not a party defendant to this proceeding, and even though we treat the present case as one for a specific performance, the court has not jurisdiction of both parties in a way to compel the execution and delivery of the promissory note. If the bill is to be treated as one for a specific performance, there is a further difficulty. The lands upon which a mortgage is to be given are nowhere described. Neither the acreage nor the value is given, but it only shows that they are "certain lands," and that these lands are beyond the jurisdiction of this court and situated "in Louisiana." The agreement of Nalty to indorse a promissory note for his company, or even to execute a mortgage on his own lands, could not be construed as the undertaking of

the defendant to pay in cash three thousand nine hundred and one dollars and seventy-seven cents. The prayer here is for the recovery of money. The petition fails to show what has become of the lumber company or its assets, or why the lumber company did not execute the promissory note and have its president indorse the same. The mere fact that Nalty is president of his company does not make him personally liable for the debts of the company.

In our consideration of this case it is unnecessary to decide whether the signature of the East Union Lumber & Manufacturing Company, by J. M. Nalty, president, would be sufficient under the statute of frauds to bind Mr. Nalty personally. The whole proceeding is a strained effort to impose personal liability upon J. B. Nalty as an officer of his company without sufficient legal grounds.

The decree appealed from will be reversed, the demurrer sustained, and the bill dismissed.

*Reversed, sustained and dismissed.*